Good morning, Your Honors. My name is Leslie Bowman, and I represent the appellant Mary Elizabeth Schipke. I would like to reserve three minutes for my rebuttal. Your Honors, Ms. Schipke's religion may not be acceptable, logical, consistent, or comprehensible, but according to the Zimmerman case, that doesn't matter. If it's her religion and if she believes in it, then it is to be protected. Did she litigate this already once before? Well, you could say that the issue was raised. She did file a petition for habeas. In Texas? In Texas. Raising this issue? She raised the issue. How did that come out? It did not come out well. The the Raised it and lost would be another way of saying it. That's correct. She raised it and lost. Why isn't she collaterally stopped from doing it again? Well, Your Honor, first of all, it was not the same parties. It was a petition that was responded to by the warden of the prison system. It wasn't a criminal matter. It wasn't responded to by a prosecutor, although I suppose you could say the government is the government, but I don't think that that would be correct in this situation. There was no hearing. I would submit that it was not fully litigated. And when she did not prevail, she filed a notice of appeal to the Fifth Circuit, which was dismissed because she didn't timely submit a brief. So she lost out on the opportunity to have some kind of review of the court's decision. Well, but that was her fault. I mean, she elected not to pursue her appeal, and that still becomes a final judgment for purposes of collateral estoppel. Isn't that true? Your Honor, it does become a final judgment, but I would disagree that it was her fault. According to the documents she filed, she asked for reconsideration. She was imprisoned. She's chronically ill and mentally ill. She was proceeding pro se. And what she explained in her testimony was that she was being moved around, that she lost access to some of her legal documents, didn't always have access to a law library. I would think that when a petitioner in that type of situation is proceeding pro se, that there should be something like a rule of lenity involved here. Well, but application of a rule of lenity to those circumstances would mean there cannot be collateral estoppel. So in other words, if she neglects her appellate rights, the remedy for that should be that collateral estoppel does not apply? Well, I think that what some of the cases say, that I believe there's a Supreme Court case that involved the State of Montana. I believe that it's United States v. Montana talked about the fact that there should be a redetermination of issues if there's reason to doubt the quality, the extensiveness, or the fairness of the procedures that were followed in the prior litigation. And in this particular case, especially since she proceeded pro se and there was no hearing. What difference would a hearing have made here? Because as I read the decision of the Texas court, it gave full credence to the sincerity of her beliefs and simply held as a matter of law that any, that there was not a substantial burden. I'm not sure what a hearing would have accomplished. What is your claim in that regard? I think a hearing would have accomplished an opportunity for Ms. Shipke to explain why her sincerely held beliefs are substantially burdened. That's the same stumbling block that was reached in front of the district court in Arizona. And this collateral estoppel issue was raised by the government, and the district court judge in Arizona proceeded with the hearings. It may not have been something that he put into words, but it appears obvious that the district court did not believe that she should be precluded by collateral estoppel. Does that mean we are precluded from finding she's precluded, or don't we have plenary review over that question? Yes, of course, Your Honor, you do. But the district court judge in Arizona is obviously a very fine jurist, and I believe that it was considered by him, so I just think it adds a little bit of authority to the argument that there should not be collateral estoppel here. On the merits, suppose someone says it's against my religion to have my fingerprints taken when I'm in prison. Would someone have the right to refuse to have the fingerprints taken? Or it's against my religion to have my mugshot taken. How about that? Well, I think it would go through the same analysis that we go through any time somebody raises. Do you think theoretically someone could have a constitutional right to refuse to be fingerprinted and mugshotted when in jail? Well, I think the issue could be raised, and then there would have to be an analysis of whether it's a religious belief or a secular belief. Suppose it's a religious belief. And sincerely held? Sincerely held. Then the next step would be how is it substantially burdened? And in this. They take your soul when they take your picture. They capture part of your being by taking your fingerprints, just like your lady says. Well, this is the same sort of analysis that the court went through in the war soldier case, where the Native American prisoner didn't want to have his hair cut because he said that that was his lifetime of knowledge and it was against his religion, although he would cut it at the death of a close relative. We're talking about the ability to identify people in custody so they know who they have and they make sure they have the right person. Well, in this case, Ms. Shipke has been willing to give a mugshot. She has been willing to give fingerprints. I understand that. We're talking about DNA in your case. In my hypothetical, you have somebody who says I don't want to be identified through these other means. And you say theoretically they could refuse to be fingerprinted and photographed. I do think they would at least be entitled to raise the issue and have an analysis. You know, it goes then to how substantially burdened is the religion, the religious practice, I should say, or the exercise of the religion, and then also if there is a compelling government interest, whether that's a least restrictive means. Let me shift gears for a second. If I understand correctly, Ms. Shipke was charged with violating Term 7, but was found to have violated Term 4. That's correct, Your Honor. If that's a due process violation, what would you have us do about that? Well, Your Honor, I think that at a minimum the case should be remanded for another evidentiary hearing. That was a very egregious due process violation, much worse than what was found to be a violation in the Javier case. The government Why would it not be harmless error? Well, for a number of reasons. For one thing, there's been a subsequent violation, and I think it's unclear whether the district court judge took that into consideration in terms of it being a second violation when she imposed a disposition in that case. So I do not think it is in any way harmless error. It also sets a very dangerous precedent that the government could not give written notice of an allegation, that the parties could prepare for a hearing without knowing what they're coming in to defend against. We were at a huge disadvantage not understanding what residents the government was referring to. Let me ask you this. She originally was placed on 60 months of supervised release. That's correct. And then after being found in violation, Judge Roll reduced it to 36 months. That's true, Your Honor. If we were to throw this out and reinstate her to the status quo, she'd be back on 60 months instead of 36 months. Well, I think that is what would happen, and that would be to her disadvantage. It would have been to her disadvantage, except that she was recently sentenced to 14 months in prison with an additional two years of supervised release. So at this point, she's back up to the 60 months of supervised release. But beyond that, she also had served almost two months in prison on that violation, and she received also a sentence of time served. And maybe the district court needs to consider whether to give her some kind of credit towards this subsequent sentence if she wasn't really found in violation properly of one of the allegations. If there are no further questions on the DNA issue, I think the second issue I would just submit on the briefs. Thank you, Ms. Baumann. Thank you, Your Honor. Ms. Baumann. Good morning. Good morning. My name is John Granoff. May it please the Court, I represent the United States in this matter. I just want to address the due process charge, the notice charge that the defendant has raised. The Court had indicated that the defendant was not found in violation of the charged allegation, and I believe the record disputes that. The defendant, according to the magistrate's order, this would be the defendant's supplemental record. Could you speak a little louder? I'm having trouble hearing you. Yes, Your Honor. Thank you. At page 22, the magistrate actually concluded that it is the recommendation of this Court that the district judge, after his independent review and consideration, find the defendant in violation of the charged, excuse me, in violation of the alleged charge or accept a government motion to amend the charge to conform to the evidence. So it is our position that the defendant did receive adequate notice of the charge. She was informed in the petition that the charge was that she basically not, that she had to give 10 days' notice before she changed her residence, and we believe that that charge was proven. And I also believe that the record supports the fact that even if, assuming the government should have specifically alleged that the second residence, as counsel suggests, the error would, any error would be a harmless error because the defendant, in my opinion, the defense would have been exactly the same. The defendant's defense was that she didn't reside at the second residence, so I would submit that that would have been her same defense had that specific residence been alleged there. And I would also submit that the evidence supported that particular charge. How does term 4 get into that? She's charged with violating term 7, and at the end of the case, she confounds with violating term 4. How does that sneak in? It's somewhat peculiar to me, Your Honor, but it appears as if the magistrate, if you read his order, which is in the record at page 22 of the, of volume 1 of the defendant's record, he basically suggests that the government, if they desire, could amend the charge to conform to that, but that doesn't mean he didn't find her in violation of the charge that was alleged, which he did find, and the district court approved those findings and adopted those findings. So that was, that was at the suggestion of the magistrate, Your Honor. And if I could move on to the collateral estoppel issue, I believe, Your Honors, that the, first I'd like to correct the record. My interpretation is if you look at the record that Judge, Judge Roll did not reach or consider that issue of collateral estoppel, and that would be in the record, the government's supplemental record at pages 210 and 211, when it was discussed, the court indicated, and this is from my recollection, that the case was on remand and that he believed, based on the limited remand, he needed to proceed with the hearing, the Zimmerman hearing, which we did do. So that's my interpretation of the record, is that the Judge Roll did not specifically find or actually make a ruling on the collateral estoppel issue. And I believe that that, that issue should prevent her from relitigating the Religious Freedom Restoration Act claim here, as the Court's already spoken to that issue earlier. I have the same feelings on that. I believe it was fully addressed there. In Texas, although the defendant cited to the First Amendment, Judge McBride there considered the issue in relation to the Bowen test, excuse me, the Bowen case, a pre-Smith case, which is exactly what our circuit instructs us to do in determining whether or not there's a substantial burden on the exercise of someone's religious beliefs. That's exactly what he did. He found against her on that issue. Her appeal was dismissed, and she should not be able to relitigate that here. She makes a fairness argument, but the reality is, is that is a final judgment. And I believe the parties are the same, the parties of the government, regardless of whether or not she alleges that the party was the warden in that case. Realistically, the parties are the government in both matters. The other issue is, even if the Court does reach that issue, it's my position that there is no substantial burden on the exercise of her religious, the exercise of her religious beliefs. I think the court, the district court here made the same findings as Judge McBride on that issue. He found that because she objected to the use, her main objection is to the use of the government's use of the DNA, that that does not constitute a substantial burden on the exercise of her religious beliefs. And I think this Court, if the Court looks at our cases in the circuit, specifically the Navajo Nation case, and Navajo Nation tells us to apply Bowen, I think the Court should reach the exact same conclusion. What's your response to counsel's argument that it's not really the same litigant on the government side? My response, Your Honor, is that it's still the government. And, you know, that's my response. The suit was against the government, although she specifically did not sue the United States, but in my opinion, the warden is part of the United States government. Does the law require that the parties be the same on both sides, or does it only require that she be the same party in both cases? I think the way the law is read is that it's a party or a party in privity. I think that's the language that's used. I take it that the government had the same interest, the warden had the same interest in that case that the government has here to defend the use of the DNA. Yes, Your Honor. I agree. And her interests were the same? It was a Federal warden. It was the Bureau of Prisons? Yes. Yes. And the United States responded. The civil attorney who worked in the United States Attorney's Office filed a response, and Judge McBride ruled against the defendant on the issue of the substantial burden. As far as even if the Court wants to get to the next issue, assuming the Court goes there, I think clearly that this circuit has concluded that the interests furthered by the DNA Act are undeniably compelling, and that's a word used right out of the United States v. Kincaid. In fact, they also used the word monumental in that case. And I would submit that regardless of whether or not they were speaking to that – in that case they were speaking to the Fourth Amendment issue, I believe that the interest furthered by the Act would be the same whether or not the Court looks at it underneath the First Amendment, the Religious Freedom Restoration Act, or the Fourth Amendment. The interest should not change. It doesn't matter what amendment you're looking under it. So that's my position, Your Honor. I think that the Court, that the lower court basically for all intents and purposes adopted the Kamerling decision out of the D.C. circuit, is very similar to the situation here. And the Court did find that the government has a compelling interest in enforcing the DNA Act against this defendant, and that we're using the least restrictive means of achieving that interest against this particular defendant, especially given her background, the history of violence that she has in her background, the fact that she's been convicted of a crime of violence threatening to blow up a United States post office. Related to her, the government clearly has a compelling interest to have her DNA profile in the DNA database and to maintain it and consistent with the DNA Act as such. Unless there's any other questions, I believe I was submitted on the briefs. Thank you, Mr. Berman. Thank you. Ms. Feldman. I wanted to respond. Could you hold the mic close to you, please? I wanted to respond first to the government's argument that the defense would have been the same regarding the allegations in the petition. That is absolutely not true, because the defense was that she was asked to leave the battered women's shelter, that it was not her free choice to leave, and that because she was asked to leave so suddenly, it was impossible for her to give 10 days' notice. Obviously, that's a very different defense than there would have been to her refusing to enter another shelter. And in common language, when you hear the word reside, you don't think of a place that the person's never stepped foot into or had their belongings or laid their head down on a bed. So that argument really does not have merit. What would her defense have been? Her defense? Would she have been charged with number four? To number four, we didn't even go there. We didn't even consider it. If the charge had been that she wasn't following a reasonable instruction from her probation officer, the investigation would have been different, the defense would have been different.  You keep saying that, but how would it have been different? It would have been different in that I would have investigated this second shelter much more carefully to see if what Ms. Shipke was saying could be validated or could be proven, perhaps tried to contact the taxi cab driver that actually took her to the shelter to see what he observed or how her behavior was with him, maybe even contacted the woman who was the intake person. There would have been a very different investigation and a very different defense. I want to go back to this issue that Judge Silverman mentioned earlier, a sort of harmless error analysis. Let's assume that there's a due process violation in terms of notice that she had what the charge was. What happened as a result of what Judge Rohl did ultimately was to give her a lesser sentence than she had before. So what can possibly be the harm from any violation associated with notice if the consequence of that is that she got less total time, including supervised release, than she had previously? Well, as I mentioned before, first of all, she also served some time in prison. Well, but we can't undo that. We can't undo that, but there – and we didn't know this when all of this was unfolding, but there has been a subsequent violation. And I would think that in terms of due process, that a judge sitting and deciding about a sentence or a disposition would have taken into consideration that this was a second violation, a subsequent violation, and perhaps would have imposed a very different sentence. We don't know that, but on remand we would go back to this same judge and at least have her take that into consideration. Counsel, I have a question about the underlying assertion. The petition to revoke at ER 88 charges a violation of Condition 7, and the judgment by the district court states that the court finds that defendant violated the terms of supervised release as reflected in the petition. In other words, the intervening magistrate introduced this kind of confusing idea of Condition 4, but I don't see where the district judge ever adopted that. So as I read these documents, the district court found what was in fact charged. So how do you read what he's done differently? I'm looking at ER 17, the judgment. Well, Your Honor, even taking out the confusion in the different allegations, we still were at a disadvantage in not understanding what the government was alleging. The district court judge, I suppose, found that she changed her residence from the Well, that's a different question. You're alleging a due process violation because the petition said Condition 7 and the court said Condition 4. And I guess that's what I'm confused about, because it looks to me like the petition said Condition 7 and the district court said Condition 7, even though there was some other chat in between. So I guess I just have trouble following that. And, Your Honor, we also have had trouble following that. And I have trouble following your argument as to why there's a problem, I guess. Well, I think the problem is that when we were in the hearing, the parties were arguing different things because of the lack of notice of the address, that we were not properly prepared to argue the case. And even if the district court judge found that she was in violation of that condition, I think the defense was compromised by not understanding what we were defending. Okay. That's it. Thank you very much, Ms. Palmer. Mr. Granoff, thank you. The case just argued is submitted. Good morning.
judges: Silverman, Graber, Cjj Lynn (N. Texas), Dj